UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMY BATTLE TAYLOR, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 10-cv-844 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

**I.   Introduction**

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon.[1]  The attack decimated the facility, killed 241 U.S. servicemen and left countless others wounded.  The families of eight Marines who were killed in the bombing now bring suit against defendant Islamic Republic of Iran ("Iran").  Their action is brought pursuant to the state-sponsored terrorism exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA").  Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008).  That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign

---

[1] For previous cases arising out of the 1983 Beirut bombing, see *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003) (Lamberth, J.); *Valore v. Islamic Republic of Iran*, 478 F. Supp. 2d 101 (D.D.C. 2007) (Lamberth, J.); *In re Islamic Republic of Iran Terrorism Litigation*, 659 F. Supp. 2d 31 (D.D.C. 2010) (Lamberth, C.J.); *Anderson v. Islamic Republic of Iran*, 753 F. Supp. 2d 68 (D.D.C. 2010) (Lamberth, C.J.); *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 1 (D.D.C. 2011); *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150 (D.D.C. 2011) (Lamberth, C.J.); *O'Brien v. Islamic Republic of Iran*, No. 06-cv-690, 2012 WL 1021471 (D.D.C. 2012) (Lamberth, C.J.); *Davis v. Islamic Republic of Iran*, No. 07-cv-1302, 2012 WL 1059700 (D.D.C. 2012) (Lamberth, C.J.); *Estate of Brown v. Islamic Republic of Iran*, No. 08-cv-531, 2012 WL 2562368 (D.D.C. 2012) (Lamberth, C.J.); *Fain v. Islamic Republic of Iran*, No. 10-cv-628, 2012 WL 3095308 (D.D.C. 2012) (Lamberth C.J.).

states" that sponsor terrorist acts. *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting reference omitted).

## II.     Liability

On August 29, 2011, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran*, which also concerns the Marine barracks bombing, and entered judgment in favor of the plaintiffs and against Iran with respect to all issues of liability. *Taylor v. Islamic Republic of Iran*, 811 F. Supp. 2d 1, 6–10 (citing *Peterson*, 264 F. Supp. 2d 46 (D.D.C. 2003) (*Peterson I*)). This Court then referred this action to a special master for consideration of plaintiffs' claims for damages. *Id.* at 17. Since the issue of liability has been previously settled, this Court now turns to examine the damages awards recommended by the special master.

## III.    Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages. *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'" *Salazar v. Islamic Republic of Iran*,

370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)). As discussed in *Peterson II*, plaintiffs have proven that the defendant's commission of acts of extrajudicial killing and provision of material support and resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (D.D.C. 2007).

The Court hereby ADOPTS, just as it did in *Peterson II*, *Valore*, *Bland*, *Anderson*, *O'Brien*, *Davis*, and *Brown* all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87; *Bland v. Islamic Republic of Iran*, 831 F. Supp. 2d 150, 154 (D.D.C. 2011); *Anderson v. Islamic Republic of Iran*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012); *O'Brien v. Islamic Republic of Iran*, No. 06-cv-690 (D.D.C. Mar. 28, 2012), 2012 WL 1021471; *Davis v. Islamic Republic of Iran*, No. 07-cv-1302 (D.D.C. Mar. 30, 2012), 2012 WL 1059700; *Estate of Brown v. Islamic Republic of Iran*, No. 08-cv-531 (D.D.C. July 3, 2012), 2012 WL 2562368. However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Peterson II*, 515 Supp. 2d at 53. The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.[2]

---

[2] The special master reports were originally filed on the *Valore v. Islamic Republic of Iran*, Civ. Case No. 03-1959, and *Arnold v. Islamic Republic of Iran*, Civ. Case No. 06-516, dockets. The special masters in those cases followed an identical administrative plan to the administrative plan in this case, and this Court thus finds it appropriate to take judicial notice of those reports in this case. Additionally, plaintiffs have filed on this case's docket a chart cross-referencing the *Valore* and *Arnold* special master reports with the appropriate plaintiffs in this case, and the Court finds that chart to be accurate. *See* Plaintiffs' Report Regarding Record Evidence Available for Judicial Notice, July 25, 2011, ECF No. 17, Ex. 1.

### A.     Solatium

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Estate of Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings." 466 F. Supp. 2d 229, 269 (D.D.C. 2006). Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million. *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51). In the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (quoting *Valore*, 700 F. Supp. 2d at 85); *see also Bland*, 831 F. Supp. 2d at 157. Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million. *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003); *Bland*, 831 F. Supp. 2d at 157; *Anderson*, 2012 WL 928256, at *2;

This Court has recently expounded further on the *Heiser* framework. In *Bland* and *O'Brien* this Court held that—absent special circumstances—it is inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving servicemen. *Bland*, 831 F. Supp. 2d at 157–58; *O'Brien*, 2012 WL 1021471, at *3. In those cases, the

servicemen received $1.5 million pain and suffering awards for their emotional pain and suffering, but did not receive an award for physical pain and suffering. *Id.* The Court reduced the awards of the family members in rough proportion to the *Heiser* framework to: $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings. *Id.*; *accord Davis*, 2012 WL 1059700, at *6.

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

The special master recommended $5 million solatium awards for plaintiffs Amy Battle Taylor, Mary V. Hernandez, James Hernandez, Marcus A. Hernandez, and Matilde Hernandez III—the children of deceased servicemen David Battle and Matilde Hernandez, Jr. *Valore v. Islamic Republic of Iran*, Civ. Case No. 03-1959, Report of Special Master, May 12, 2009, ECF No. 29, at 25, ECF No. 30, at 42. Both servicemen were killed in the 1983 Beirut bombing. Applying this Court's more recent cases, absent exceptional circumstances the children of a deceased victim should receive a baseline $3 million solatium award.[3] The special master did not note any exceptional circumstances necessitating a deviation from the framework, and this

---

[3] While the 2007 *Peterson II* decision gave both parents and children of deceased servicemen a $5 million baseline solatium award, *Peterson II*, 515 F. Supp. 2d at 52, this Court has more recently decided to give children of deceased servicemen a $3 million baseline solatium award. *See Bland*, 831 F. Supp. 2d at 157; *Anderson*, 839 F. Supp. 2d 263, 266 (D.D.C. 2012); *O'Brien*, 2012 WL 1021471, at *2; *Davis*, 2012 WL 1059700, at *4–7; *Brown*, 2012 WL 2562368, at *3; *Fain*, 2012 WL 3095308, at *3.

Court agrees. *Id.* Therefore, the Court will correct these five awards and award each child $3 million in solatium damages.

Serviceman Moses Arnold, Jr., was also killed in the 1983 bombing. Report of Special Master, Apr. 8, 2012, ECF No. 52, at 4. The special master recommended solatium awards for his relatives that were consistent with this Court's framework for the family of a *surviving* serviceman ($2.5 million to his parents; $1.25 million to his six siblings). *Id.* at 16–17. However, Moses' relatives should have received the higher baseline solatium awards given to families of *deceased* servicemen ($5 million to his parents; $2.5 million to his six siblings). The Court will therefore correct these awards accordingly.

### B.  Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52); *accord Bland*, 831 F. Supp. 2d at 158; *Davis*, 2012 WL 1059700, at *7; *Brown,* 2012 WL 2562368, at *5. Here, the Court will again apply this

same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $509,120,000.

## IV.     Conclusion

Sponsoring terrorism has become an expensive activity for Iran and its associates. After today, this Court will have issued over $9.5 billion in judgments against Iran from the 1983 Beirut bombing.[4] One other Beirut bombing case, containing thirty-six plaintiffs, remains pending before this Court; its completion will surely add to Iran's tab. *See Spencer v. Islamic Republic of Iran*, Civ. Case No. 12-42 (D.D.C.). Regardless, no award—however many billions it contained—could accurately reflect the countless lives that have been changed by Iran's shameful acts.

In closing, the Court applauds the plaintiffs' persistent efforts to hold Iran accountable for its cowardly support of terrorism. The Court concludes that defendant Iran must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983. This horrific act impacted countless individuals and their families, a number of whom receive awards in this lawsuit. This Court hopes that the victims' families may find some measure of solace from this Court's final judgment. For the reasons set forth above, the Court finds that defendant is responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism

---

[4] *See Peterson II*, 515 F. Supp. 2d at 60 (awarding victims $2,656,944,977 in compensatory damages); *Valore*, 700 F. Supp. 2d at 90 (awarding victims $290,291,092 in compensatory damages and $1 billion in punitive damages); *Murphy*, 740 F. Supp. 2d at 83 (awarding victims $31,865,570 in compensatory damages and $61,302,571.60 in punitive damages); *Bland*, 831 F. Supp. 2d at 158 (awarding victims $277,805,908 in compensatory damages and $955,652,324 in punitive damages); *Anderson*, 839 F. Supp. 2d at 267 (awarding victims $7,500,000 in compensatory damages and $25,800,000 in punitive damages); *O'Brien*, 2012 WL 1021471, at *4 (awarding victims $10,050,000 in compensatory damages and $34,572,000 in punitive damages); *Davis*, 2012 WL 1059700, at *8 (awarding $486,918,005 in compensatory damages and $2,161,915,942 in punitive damages); *Brown*, 2012 WL 2562368, at *6–7 (awarding $183,281,294 in compensatory damages and $630,487,651 in punitive damages); *Fain*, 2012 WL 3095308, at *5 (awarding $15,268,703 in compensatory damages and $52,524,338 in punitive damages).

exception for $148,000,000 in compensatory damages and $509,120,000 in punitive damages, for a total award of $657,120,000.

      A separate Order and Judgment consistent with these findings shall be entered this date.

      SO ORDERED.

      Signed by Chief Judge Royce C. Lamberth on August 2, 2012.